# Third District Court of Appeal

## State of Florida

Opinion filed August 13, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-716
Lower Tribunal No. 12-49371
_____

**Allscripts Healthcare Solutions, Inc.,**
Appellant,

vs.

**Pain Clinic of Northwest Florida, Inc., et al.,**
Appellees.

An Appeal of a non-final order from the Circuit Court for Miami-Dade County, John W. Thornton, Judge.

Greenberg Traurig, P.A., and Hilarie Bass, Elliot H. Scherker, Mark A. Salky, Brigid F. Cech Samole, Timothy A. Kolaya, and Jay A. Yagoda, for appellant.

Kozyak, Tropin & Throckmorton, P.A., and Adam M. Moskowitz and Thomas A. Tucker Ronzetti; Fuerst, Ittleman, David & Joseph, PL, and Allan A. Joseph, Christopher M. David and Mitchell M. Fuerst; Kula & Samson, LLP, and Elliot B. Kula, Daniel M. Samson, and W. Aaron Daniel; Arthur J. England, Jr., P.A., and Arthur J. England, Jr., for appellees.

Before ROTHENBERG, LOGUE, and SCALES, JJ.

LOGUE, J.

Allscripts Healthcare Solutions, Inc. ("Allscripts") appeals an order denying its motion to compel arbitration. We affirm.

Allscripts marketed software to certain doctors and healthcare providers. The plaintiffs in the case below, and the appellees here, are doctors and providers who purchased licenses for the software ("the Doctors"). The purchases occurred pursuant to master agreements between the Doctors and a subsidiary of Allscripts ("the Subsidiary"). The master agreements governing the purchase of these licenses contained an arbitration provision, as follows:

> Any dispute or claim arising out of, or in connection with, this Agreement shall be finally settled by binding arbitration . . . . Except for [the Doctors] and [the Subsidiary], no other party may sue or be sued under this agreement.

Allscripts was not a party to the master agreements.

As alleged in the Complaint, when the software failed to sufficiently support the Doctors' compliance with the requirements of certain federal regulations, Allscripts removed the software from the market and ceased technical and other support for the software. Allscripts then directly contacted the Doctors to offer a free upgrade of the software. The upgrade, however, consisted of completely different software that was less effective than the prior software and required substantial and expensive costs to retrain employees and transfer records. The Doctors filed a class action lawsuit directly against Allscripts. Allscripts moved to

compel arbitration, based on the arbitration provision in the master agreements. The trial court denied the motion. This appeal followed.

The rub in this case is that Allscripts is not a signatory to the arbitration provisions at issue. Florida courts have long held that "no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate." Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999). "Generally, therefore, a non-signatory to a contract containing an arbitration agreement cannot compel a signatory to submit to arbitration." Rolls-Royce PLC v. Royal Caribbean Cruises LTD., 960 So. 2d 768, 770 (Fla. 3d DCA 2007).

Florida courts, however, have recognized certain exceptions to this rule. Under the doctrine of equitable estoppel, for example, Florida courts have permitted a non-signatory defendant to enforce an arbitration clause against a signatory plaintiff either: (1) "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory," Koechli v. BIP Int'l, Inc., 870 So. 2d 940, 944 (Fla. 1st DCA 2004) (citation omitted); or (2) when "there are allegations of concerted action by both a nonsignatory and one or more of the signatories to the contract." Roman v. Atl. Coast Constr. & Dev., Inc., 44 So. 3d 222, 224 (Fla. 4th DCA 2010) (citation omitted). Allscripts asserts that arbitration should be compelled under the first exception.

The idea behind the first exception is that a signatory plaintiff should not be allowed to sue to essentially enforce its rights under a contract and, at the same time, evade an arbitration agreement in the contract, simply by naming as defendants parties who were not signatories to the contract. As one court explained:

> The purpose of the doctrine is to prevent a plaintiff from, in effect, trying to have his cake and eat it too; that is, from relying on the contract when it works to his advantage by establishing the claim, and repudiating it when it works to his disadvantage. . . . The plaintiff's actual depend[e]nce on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the *sine qua non* of an appropriate situation for applying equitable estoppel.

Bailey v. ERG Enterprises, LP, 705 F.3d 1311, 1320 (11th Cir. 2013) (citation omitted); see also Giller v. Cafeteria of S. Beach Ltd., LLP, 967 So. 2d 240, 242 (Fla. 3d DCA 2007) ("One cannot both take advantage of contract provisions to seek to impose liability on an individual professional and at the same time avoid another contract term or provision for which it has no use."); Morales v. Perez, 952 So. 2d 605, 610 n.2 (Fla. 3d DCA 2007) (noting that "Dr. Perez is attempting to avoid the arbitration provision [of the contract] while simultaneously seeking to enforce certain provisions purportedly in his favor"); BDO Seidman, LLP v. Bee, 970 So. 2d 869, 875 (Fla. 4th DCA 2007) ("A party may not rely on a contract to establish his claims while avoiding his obligation under the contract to arbitrate such claims.").

4

A plaintiff's dependence on the contract in this sense means more than that plaintiff would not own the product except for the contract: "A simple but-for relationship does not constitute the actual dependence on the underlying contract that equitable estoppel requires." Bailey, 705 F.3d at 1321-22. Instead, reliance on the contract in this context requires that "a party must actually depend on the underlying contract to assert its claims." Id. at 1321. Thus, for this exception to apply, "the claim . . . must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself." Rolls-Royce, 960 So. 2d at 771.

This last point depends upon a factually-intense review of the claim. Some of the distinctions made by the courts in this regard are quite fine. Compare Giller, 967 So. 2d at 242 (compelling arbitration because "indisputable nexus" existed between the plaintiff's claims of architectural malpractice and the contract under which the defendant architect was hired to work on the project), with Rolls-Royce, 960 So. 2d at 770 (declining to compel arbitration because a cruise line company's claim that a subcontractor's negligent design, manufacture, and repair of propulsion pod was independent of the cruise line's contract with a general contractor to build the cruise ship).

We conclude this case is more similar to Rolls-Royce than Geller. While it is certainly true that this lawsuit would not exist but for the fact that the Doctors

purchased the software licenses from the Subsidiary, the causes of action in the Complaint are not attempts to enforce contractual rights under the master agreements. Instead, the allegations in the Complaint reach beyond the master agreements to encompass actions that Allscripts took outside the scope of the agreements: allegedly marketing the defective software, ceasing support of the software, and attempting to force the Doctors to accept an alternative product which was, again allegedly, less effective and more expensive to use. These are not actions that the Subsidiary participated in or controlled. They are actions by Allscripts and therefore outside the contract between the Doctors and the Subsidiary.

Thus, for the arbitration agreements here to be triggered, the Doctors' claims "must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself." Rolls-Royce, 960 So. 2d at 771. Based on the class complaint as framed, we agree with the Doctors that the class claims do not require reference to or construction of the master agreements.

Allscripts argues the Doctors should be compelled to arbitrate because Allscripts could only be liable here as an alter ego of the Subsidiary. To the extent that Allscripts relies on precedent that permits a party to pierce its own corporate veil to allow that party the benefit of an arbitration clause between its subsidiary and a signatory-plaintiff, those cases rely on the same equitable estoppel theories

6

discussed above. See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 201 (3d Cir. 2001) (referencing cases in which, based on an equitable estoppel theory, "a non-signatory voluntarily pierces its own veil to arbitrate claims against a signatory that are derivative of its corporate-subsidiary's claims against the same signatory"). Because the Doctors' claims do not arise out of the master agreement, those cases are inapposite.

We do not, however, reach the issue of the viability of any cause of action brought by the Doctors against Allscripts with respect to their alleged injuries stemming from the purchase of the software licenses, outside of their rights under the master agreements with the Subsidiary. We note only that the Doctors cannot rely on any rights under the master agreements in establishing any claims against Allscripts without invoking the arbitration provisions.

Affirmed.