DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BERGERON ENVIRONMENTAL AND RECYCLING, LLC,**
Appellant,

v.

**LGL RECYCLING, LLC, WASTE MANAGEMENT INC. OF FLORIDA,
ANTHONY LOMANGINO, CHARLES GUSMANO,** and
**JOHN CASAGRANDE,**
Appellees.

Nos. 4D2022-2159 & 4D2022-3155

[October 9, 2024]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jack B. Tuter, Jr., Judge; L.T. Case No. CACE-16000158.

Bard D. Rockenbach of Burlington & Rockenbach, P.A., West Palm Beach, and Mitchell W. Berger, Sharon Kegerreis, William O. Diab, and Alejandro Miyar of Berger Singerman LLP, Fort Lauderdale, for appellant.

Bruce Rogow of Bruce S. Rogow, P.A., Cedar Mountain, NC, Tara Campion of Bruce S. Rogow, P.A., Boca Raton, and Roy Fitzgerald and Alan Rose of Mrachek, Fitzgerald, Rose, Konopka, Thomas, & Weiss, P.A., West Palm Beach, for appellees LGL Recycling, LLC, Anthony Lomangino, Charles Gusmano, and John Casagrande.

Brian H. Hole, Katherine M. Joffee, and Philip E. Rothschild of Holland & Knight LLP, Fort Lauderdale, Ilene L. Pabian of Holland & Knight LLP, Miami, and Frederick J. Fein and Daniel R. Lever of Clyde & Co US LLP, Miami, for appellee Waste Management Inc. of Florida.

GROSS, J.

After a lengthy non-jury trial in a case arising out of a joint venture agreement ("JVA"), involving multiple parties and multiple counts, the trial court wrote detailed and thoughtful final judgments that found in favor of all defendants on all counts. We affirm the final judgments in all respects and write to address issues surrounding a waiver of jury trial contained in the JVA.

### Background

In November 2011, Bergeron Environmental and Recycling LLC and LGL Recycling, LLC f/k/a Sun Recycling LLC ("Sun") formed a joint venture to perform waste management and recycling services for Broward County municipalities. Sun contributed infrastructure and personnel to the venture, and Bergeron provided its contacts to and relationships with local governments.

The joint venture commenced work on contracts in 2013.

In March 2014, Sun's parent corporation, Southern Waste Systems ("SWS") hired a consultant to begin marketing its assets, including Sun, for sale. SWS reached out to multiple potential buyers without success and ultimately approached Waste Management Inc. of Florida ("Waste").

After extensive negotiations, SWS and Waste completed an asset purchase agreement in which Waste agreed to purchase SWS's assets for $510 million. The agreement did not include Sun's interest in the joint venture or its assets. The joint venture's customer contracts were excluded from the transaction. Once the transaction closed in 2016, the joint venture continued to exist, and the waste tons generated under the venture's customer contracts were delivered to Waste's facilities. Waste delivered the appropriate tons to the required disposal sites. The customer contracts were completed in 2018 without any interruption in services. The joint venture's profitability increased substantially once Waste became Sun's subcontractor.

### The Lawsuit

Bergeron filed suit against Sun in 2016. Ultimately, a sixth amended complaint (the "complaint") included Sun, Waste, and three men who were principals or employees of Sun (the "individual defendants"). The complaint contained sixteen counts: two breach of contract counts against Sun, tortious interference with contract against Waste, tortious interference with contract against the individual defendants, breach of fiduciary duty against Sun, aiding and abetting a breach of fiduciary duty against Waste and the individual defendants, conspiracy to tortiously interfere with contract against Waste and the individual defendants, conspiracy to breach fiduciary duties against Waste and the individual defendants, accounting against Sun, wrongful dissociation against Sun, damages incidental to dissolution of the joint venture against all defendants, misappropriation of trade secrets against all defendants, and

conversion against all of the defendants except for one of the individual defendants.[1]

### *The JVA's Jury Waiver Provision*

The JVA's jury waiver provision provided:

> THE VENTURERS HEREBY KNOWINGLY WAIVE THE RIGHT ANY OF THEM MAY HAVE TO A TRIAL BY JURY IN RESPECT OF **ANY LITIGATION BASED HEREON OR ARISING OUT OF UNDER OR IN CONNECTION WITH THIS AGREEMENT**. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE VENTURERS' ACCEPTANCE OF THIS AGREEMENT.

(Emphasis added).

"It is a fundamental rule of contract interpretation that a contract which is clear, complete, and unambiguous does not require judicial construction." *GEICO Indem. Co. v. Walker*, 319 So. 3d 661, 665 (Fla. 4th DCA 2021) (cleaned up). If a contract's language is plain and unambiguous, a court must interpret the contract "in accordance with the plain meaning of the language used" so as to give effect to the contract as written. *State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566, 569–70 (Fla. 2011).

A party "may waive its right to a jury trial if the waiver was entered knowingly, voluntarily, and intelligently." *Amquip Crane Rental, LLC v. Vercon Constr. Mgmt., Inc.*, 60 So. 3d 536, 540 (Fla. 4th DCA 2011). "However, waiver of the right to a jury trial is to be strictly construed and not to be lightly inferred." *Id.* at 539.

"Broad [jury trial] waivers have been construed to include tort claims as well as contract claims[.]" *In re Actrade Fin. Techs. Ltd.*, No. 02-16212(ALG), 2007 WL 1791687, at *1 (Bankr. S.D.N.Y. June 20, 2007). Courts have concluded that non-contract claims fall within the scope of a jury waiver clause for claims "aris[ing] out of" or "concerning" a contract where the allegations in the claims relate to the contract. *See, e.g.*, *Alonso Cano v. 245 C&C, LLC*, No. 19-21826-Civ-Lenard/O'Sullivan, 2020 WL 1304910, at *3 (S.D. Fla. Mar. 19, 2020) (lease's broad jury waiver applied to Fair Housing Act claim); *Kaplan v. Regions Bank*, No. 8:17-CV-2701-T-36CPT, 2019 WL 4668175, at *5–*7 (M.D. Fla. Sept. 25, 2019) (deposit agreement's broad jury waiver encompassed malicious prosecution claim).

---

[1] Previously, the trial court had dismissed an antitrust claim for various reasons.

"A claim 'relates to' a contract when 'the dispute occurs as a fairly direct result of the performance of contractual duties.'" *Bailey v. ERG Enters., LP*, 705 F.3d 1311, 1317 (11th Cir. 2013) (citation omitted).

The JVA's jury waiver language is similar, if not broader, than a provision involving claims "arising out of or relating to" a contract. The waiver here applies to "any litigation based hereon or arising out of or under or in connection with this agreement." The waiver itself indicates that it was a material inducement for the venturers' acceptance of the agreement. As the trial court observed, all of Bergeron's claims were inextricably intertwined with the JVA and the issue of whether Sun breached that agreement.

The law gives the parties to a contract great latitude in defining the terms of their engagement. *See Okeechobee Resorts, L.L.C. v. E Z Cash Pawn, Inc.*, 145 So. 3d 989, 993 (Fla. 4th DCA 2014). One of the primary reasons for inserting jury waiver provisions in a contract is to contain the costs of litigation. Commercial litigation typically becomes unwieldy because of the interjection of tort claims, often with demands for punitive damages, into contract disputes. With their lawyers involved in creating the JVA, it is clear that Sun and Bergeron knowingly, voluntarily, and intelligently agreed to the jury waiver. Where two sophisticated businesses, represented by knowledgeable counsel, insert a broad jury waiver into an agreement, that waiver should be construed to include those statutory and business tort claims that accompanied the breach of contract counts in this case. These were the types of claims for which sophisticated businesses would seek to curtail litigation costs if litigation over the joint venture arose.

In this situation involving the scope of a broad jury waiver, it makes legal sense to apply the same test for determining the arbitrability of a claim under a broad arbitration provision that the Florida Supreme Court set forth in *Seifert v. U.S. Home Corp.* 750 So. 2d 633, 638 (Fla. 1999)— "whether a 'significant relationship' exists between the claim" and the agreement containing the jury waiver provision, "regardless of the legal label attached to the dispute (i.e., tort or breach of contract)."[2]

---

[2] Many of the cases we cite in this opinion to determine the scope and application of the JVA's waiver of jury trial involve the application of an arbitration clause. We believe the analysis in both situations is the same. Both situations involve the waiver of a jury trial. Both situations involve the freedom of parties to a contract to define the terms of dispute resolution. Both situations turn on the specific language of the agreement. The meaning of the phrase "BASED HEREON OR ARISING OUT OF UNDER OR IN CONNECTION WITH THIS AGREEMENT"

4

The Florida Supreme Court expanded on what comprises such a "significant relationship" in *Jackson v. Shakespeare Foundation, Inc.*, 108 So. 3d 587 (Fla. 2013). There, the court held that a claim for fraud in the inducement was within the scope of a broad arbitration provision because it had "a clear contractual nexus with, and thus a significant relationship to, the contract." *Id.* at 594. The court explained that a significant relationship existed because: "(1) the fraud claim is inextricably intertwined with both the circumstances that surrounded the transaction from which the contract emanated and the contract itself; and (2) resolution of the fraud claim requires the construction and consideration of duties arising under the contract." *Id.*

A cursory review of Bergeron's complaint demonstrates that all the claims, including those for tortious interference, conspiracy, misappropriation of trade secrets, breach of fiduciary duties, and conversion, were connected to the JVA. The claims in the operative complaint were replete with allegations referring to and construing the JVA, and were premised on the rights, duties and obligations created by that agreement. The dispute in this case thus arises as a "fairly direct result" from the performance of the JVA. Bergeron's claims easily fall within the scope of "any litigation" based on, arising out of, under, or "in connection" with the JVA.

### *The Jury Waiver Encompasses All of Bergeron's Claims against Sun*

As to Sun, a signatory to the JVA, the application of the jury waiver is straightforward. The waiver's expansive language encompasses all of Bergeron's claims against Sun. Bergeron's contention that Sun repudiated the JVA is inconsistent with the trial court's findings.

---

does not change depending on whether it is included in an arbitration clause or a jury waiver clause. The principle that waivers of the right to jury trial are "strictly construed" does not mean that we will rewrite a broad and unambiguous jury waiver. While some case law in this area mentions the policy favoring arbitration, the purpose of this policy is simply to place arbitration agreements "on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). Notably, an arbitration agreement involves a greater waiver of rights than a jury waiver. We also note that courts have taken an equitable estoppel analysis from arbitration clause cases and applied it to consider the enforceability of other contractual provisions. *See, e.g., Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 n.7 (11th Cir. 2012) (applying equitable estoppel from arbitration cases to determine the application of a forum selection clause). In short, we find case law addressing the scope of arbitration agreements to be persuasive authority in assessing similar issues regarding contractual jury waiver provisions.

### *The Individual Defendants were Entitled to Enforce the JVA's Waiver of Jury Trial*

The individual defendants, all non-signatories to the JVA, were entitled to enforce the jury trial waiver based upon either equitable estoppel or agency.

*A. Equitable Estoppel*

"In general, a contractual waiver binds only the parties who sign the contract." *Med. Air Tech. Corp. v. Marwan Inv., Inc.*, 303 F.3d 11, 18 (1st Cir. 2002). However, an exception to this rule exists, as "some courts have applied a theory of equitable estoppel for suits against non-signatories arising out of the contract itself[.]" *Id.*

Equitable estoppel is often applied when a non-signatory to a contract containing an arbitration clause seeks to compel a signatory to arbitrate its claims against the non-signatory. *See, e.g., MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)[3]; *see also Shetty v. Palm Beach Radiation Oncology Assocs.—Sunderam K. Shetty, M.D., P.A.*, 915 So. 2d 1233, 1235 (Fla. 4th DCA 2005).

In *Armas v. Prudential Securities, Inc.*, 842 So. 2d 210, 212 (Fla. 3d DCA 2003), the Third District identified situations where equitable estoppel allowed a non-party to enforce a contractual arbitration clause against a party to the contract: (1) "when the signatory to the contract containing the arbitration clause raises allegations of concerted conduct by both the non-signatory and one or more of the signatories to the contract"; or (2) "when each of the signatory's claims against a non-signatory make reference to or presume the existence of a written agreement."

Similarly, the Eleventh Circuit has written:

> Equitable estoppel allows a nonsignatory to enforce the provisions of a contract against a signatory in two circumstances: (1) when the signatory to the contract relies on the terms of the contract to assert his or her claims against the nonsignatory; and (2) when the signatory raises allegations of interdependent and concerted misconduct by

---

[3] *Franklin* has been abrogated to the extent that it did not make clear that state law governs the analysis. *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1170–71 (11th Cir. 2011).

> both the nonsignatory and one or more of the signatories to
> the contract.

*Bahamas Sales Assoc. LLC v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012). "[E]quitable estoppel precludes a party from claiming the benefits of some of the provisions of a contract while simultaneously attempting to avoid the burdens that some other provisions of the contract impose." *Id.*; *see also Marcus v. Fla. Bagels, LLC*, 112 So. 3d 631, 634 (Fla. 4th DCA 2013).

Courts have extended the doctrine of equitable estoppel to the enforcement of jury trial waivers.[4] For example, a federal district court permitted a non-signatory party to enforce a jury trial waiver against a signatory party under the doctrine of equitable estoppel. *Powers v. Lazy Days RV Ctr., Inc.*, No. 8:05-CV-1542-T-17-EAJ, 2006 WL 1890188, at *2 (M.D. Fla. July 10, 2006).

Similarly, in *Bakrac, Inc. v. Villager Franchise Sys., Inc.*, 02-23434-CIV-HUCK, 2003 WL 25730511, at *4 (S.D. Fla. Nov. 3, 2003), the court held that a jury waiver applied "to all of the claims asserted by and against all parties," including non-signatories to a franchise agreement and guaranty. The court found that the waiver's broad language "brings it to bear on the claims [against two non-signatories] because those claims arise out of and are intertwined with" the franchise agreement and guaranty. *Id.*

And, in *In re DaimlerChrysler AG Securities Litigation*, No. Civ.A. 00-993-JJF, 2003 WL 22769051, at *3 (D. Del. Nov. 19, 2003), the court held that because a signatory to the contract had "alleged that all Defendants acted in concert with each other," the signatory was "equitably estopped from arguing that the jury waiver" applied only to certain defendants.

*B. Agency Theory*

Finally, the First District has recognized that, in addition to equitable estoppel, "a non-signatory can compel arbitration by a signatory to an arbitration agreement when the underlying proceeding concerns actions allegedly taken by the non-signatory as an agent of a signatory." *Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 944 (Fla. 1st DCA 2004).

For example, in *Tenet Healthcare Corp. v. Maharaj*, 787 So. 2d 241, 243 (Fla. 4th DCA 2001), we held that non-signatories were "entitled to the protection of the arbitration clause not only because the claims against them arose solely in connection with their activities as officers and

---

[4] *See* footnote 2 above.

7

directors of the [signatory], but also because the claims against them arose from the same set of operative facts as those claims against the [signatory]."

A Colorado court has applied similar reasoning to jury waivers, holding that where "an agent is sued for conduct undertaken in furtherance of its principal's interests and the agent's position on jury waiver is consistent with that of the principal under a waiver in the contract between the principal and the claimant, the agent may invoke the waiver against the claimant." *Colorado Coffee Bean, LLC v. Peaberry Coffee Inc.*, 251 P.3d 9, 28 (Colo. App. 2010).

### C. Equitable Estoppel and Agency Theory Applied to this Case

While Bergeron contends that the jury trial waiver should apply only to contract claims between signatories, the waiver's plain language was not so limited. The waiver's inclusion of "any litigation" "arising out of" or "connected with" the JVA encompassed the broad range of claims Bergeron brought against the non-signatories.

Further, while the doctrine of equitable estoppel is applied most frequently in the arbitration context, the doctrine equally applies to jury waivers.

The policy favoring arbitration is a secondary consideration in the case law applying equitable estoppel to allow non-signatories to enforce an agreement against a signatory. The linchpin of equitable estoppel is fairness. A party cannot have it both ways by bringing litigation connected to an agreement containing a jury waiver and then repudiating the waiver by suing non-signatories to force a backdoor jury trial on all counts, including those against a signatory. Parties should be held to the promises exchanged in a contract. The haphazard addition of non-signatory parties to a lawsuit, especially employees or principals of a signatory, should not trump a negotiated jury trial waiver. Allowing non-signatories to enforce the jury waiver on inextricably intertwined counts is necessary to avoid evisceration of the jury waiver between the signatories.

Here, the individual defendants, under both equitable estoppel and agency, were entitled to insist on a non-jury trial on all counts involving them. As discussed above, the torts at issue all fell within the ambit of the jury waiver clause. The individual defendants were sued as agents of Sun for conduct undertaken as agents in furtherance of Sun's interests. Their position on the jury waiver is consistent with that of Sun. The concerted

misconduct alleged between all defendants makes the application of equitable estoppel appropriate.

### *Bergeron was Equitably Estopped from Avoiding the Jury Waiver as to Waste; Alternatively, Any Error in Denying a Jury Trial on the Claims Against Waste was Harmless*

As to Waste, an affirmance is also appropriate. Equitable estoppel allows Waste—a non-signatory to the JVA—to enforce the jury waiver because Bergeron alleged that Waste acted in concert with Sun, a signatory, and the individual defendants who were entitled to the benefits of the jury waiver. Indeed, Bergeron made a general allegation, incorporated and realleged in every count against Waste, that the joint venture's purpose had been destroyed because of "the concerted, premeditated acts" of Waste, Sun, and the individual defendants. Our conclusion that equitable estoppel applies to the claims against Waste is based exclusively on the allegations of concerted misconduct between Waste, Sun, and the individual defendants.

In any event, any error in denying a jury trial to Waste was harmless beyond a reasonable doubt.

The trial court found no breach of contract by Sun, no breach of fiduciary duty by any defendant, no misappropriation of trade secrets, and no conversion. As to the individual defendants and Sun, all counts were properly tried non-jury. Due to the JVA's jury waiver, Bergeron was bound by the trial court's findings.

The trial court determined that Sun did not breach the JVA. No cause of action for tortious interference with a contract can exist in the absence of a breach. *See Gerber v. Keyes Co.*, 443 So. 2d 199, 200–01 (Fla. 3d DCA 1983) (holding that no cause of action for tortious interference existed where the contract was never breached); *see also Decker-Ruhl Ford Sales, Inc. v. Ford Motor Credit Co.*, 523 F.2d 833, 836 (8th Cir. 1975) (observing that because the plaintiff "could prove no breach of its contract with Ford, it cannot maintain a cause of action against FMCC for tortious interference"). If an underlying tort has not been established, a count for conspiracy to commit that tort will not lie. *Weisman v. S. Wine & Spirits of Am., Inc.*, 297 So. 3d 646, 652 (Fla. 4th DCA 2020).

Similarly, the trial court found no breach of fiduciary duty, so causes of action for conspiring to breach a fiduciary duty and aiding and abetting the breach of a fiduciary duty cannot lie. The counts for conversion and misappropriation of trade secrets cannot stand against Waste because the

9

trial court found either that no such acts had occurred or that Bergeron had not been damaged.

Bergeron relies on *DiSorbo v. American Van Lines, Inc.*, 354 So. 3d 530 (Fla. 4th DCA 2023), to argue that a jury trial on disputed issues of fact should have preceded any non-jury trial. That case is distinguishable on multiple grounds, the most significant being that *DiSorbo* did not involve the broad jury waiver here at issue. *See Billian v. Mobil Corp.*, 710 So. 2d 984, 992 (Fla. 4th DCA 1998) (stating that "*[u]nless waived*, a jury must make findings concerning all facts which are common to the legal and equitable claims before the trial court") (emphasis supplied). Here, because of the jury waiver, Sun and the individual defendants were entitled to a non-jury trial.

In light of the trial court's findings as to the other defendants, Bergeron's "evidence presented at trial [was] insufficient to withstand a motion for a directed verdict" on the counts involving Waste, so any error in the denial of Waste's jury demand was harmless. *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1566 (11th Cir. 1987); *see also Keister v. Ruden, Barnett, McClosky, Schuster & Russell*, P.A., 449 So. 2d 304, 305 (Fla. 4th DCA 1984).

### *Conclusion*

Finding no reversible error as to any issue raised on appeal, we affirm in all respects.

*Affirmed.*

CIKLIN and KUNTZ, JJ., concur.

*           *           *

**Not final until disposition of timely filed motion for rehearing.**