877 So.2d 918 (2004)
STEVE OWREN, INC., d/b/a Treasure Coast Realty GMAC, Appellant,
v.
Lynne CONNOLLY, Appellee.
No. 4D03-4143.
District Court of Appeal of Florida, Fourth District.
July 21, 2004.
*919 Shelly Stirrat of Fox, Wackeen, Dungey, Seeley, Sweet, Beard & Sobel, L.L.P., Stuart, for appellant.
Jack J. Aiello and Kip Davis of Gunster, Yoakley & Stewart, P.A., West Palm Beach, for appellee.
FARMER, C.J.
The trial court refused to compel arbitration of a real estate agents suit against her former employing broker.[1] The denial was based on the courts finding that the agent had never signed the arbitration agreement and had not in some other way manifested assent to its terms. We affirm and write briefly to explain our conclusion.
The controversy here is more factual than legal. The agent testified unequivocally that she never signed the employment agreement with the arbitration provision. She did not say that she had no memory of signing it; instead she said that she simply did not sign it. She was emphatic that she never agreed to arbitration.
The brokers contrary evidence was basically habit and practice. No witness testified that the agent actually signed the *920 document in his/her presence. No one remembered positively seeing the document with her signature on it. Rather the brokers evidence was all about how it requires every agent to sign such agreements, and that a signed agreement simply must have been in her file at some time even though none was found and produced at the hearing. The broker showed that it is necessary for all agents to sign a particular form, other than the document with the arbitration provision, which is required by the governmental agency regulating brokers and agents. Again this was habit and practice evidence, rather than a positive and absolute contradiction of the agents testimony. Essentially the brokers position was that it was unthinkable that she did not sign the agreement, even if it could not produce one.
In denying arbitration, the trial court nevertheless did indeed think that she had not signed the agreement to arbitrate. The court said:
[Broker] did not provide sufficient evidence of an existence of a signed independent contractor agreement. [Agent] is the most credible and knowledgeable about the fact that no independent contractor agreement was ever signed. No signed independent contractor agreement was submitted. It does not exist apparently. Nobody has a copy of it. Nobody has the original. There is no agreement to arbitrate existing. [e.s.]
Thereupon, the court denied the motion to compel arbitration.
The credibility of its witnesses having failed, on appeal counsel for the broker creatively argues that the court should nevertheless hold the agent bound by the unsigned agreement because she worked for the broker for two years. In a nutshell, the argument is that in spite of refusing to agree to arbitration, the agent must be deemed bound by its terms because she accepted the benefits of employment with the broker for that period of time. The idea is that the defending party to the contract should get the benefit of a provision expressly rejected by the complaining party because she had the benefit of the defending party's performance of other terms of employment, namely the payment of a share of commissions earned by the agency.
The problem with this argument is that with even more logic it could be turned around. The agent could argue that she should not be bound by the rejected term because without an arbitration agreement the defending party got the benefit of her performance of other terms of employment, namely her sales of properties from which the broker earned a share of the commission. Perhaps the appropriate rule is really that, as between these two parties, the one who should lose on the issue of an agreement to arbitrate is the one who failed to carry its burden of proving an acceptance of arbitration as a contractual remedy. See Shearson Lehman Hutton Inc. v. Lifshutz, 595 So.2d 996, 997 (Fla. 4th DCA 1992) (proponent of arbitration has burden of establishing an enforceable written agreement to arbitrate). That is the one we apply today.
We have only recently emphasized the rule that no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate. Morgan Stanley DW Inc. v. Halliday, 873 So.2d 400, 401 (Fla. 4th DCA 2004) (quoting Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999)). The brokers argument would thus eviscerate the intended effect of the fundamental fact resolved by the trial court: that the agent refused to agree to arbitration. Thus, even assuming that mere performance of the other provisions of a carrier agreement *921 could ever be used to infer assent to an arbitration provision contained therein, the theory could not possibly work where the factual finding is that the non-assenting party expressly refused to agree to arbitration.
AFFIRMED.
GROSS and MAY, JJ., concur.
NOTES
[1] She actually worked as an independent contractor for the broker. We use the term employing broker with that understanding.