**NOT FOR PUBLICATION**

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 25-10487
Non-Argument Calendar
_____

MELISSA RANSOM,
   Individually and on behalf of all others similarly situated,
ALL JAKD UP MOTORSPORTS, INC.,

*Plaintiffs-Appellees,*

SHANTA MERRELL,
   Individually and on behalf of all others similarly situated,

*Plaintiff,*

*versus*

VYSTAR CREDIT UNION,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:23-cv-00461-TJC-PDB
_____

Before ROSENBAUM, NEWSOM, and BRASHER, Circuit Judges.

PER CURIAM:

Defendant VyStar Credit Union appeals the district court's refusal to compel arbitration based on its determination that no arbitration agreement existed. *See* 9 U.S.C. § 16. VyStar seeks to compel arbitration of claims brought by Plaintiff members Melissa Ransom and All Jakd Up Motorsports, Inc., in a putative class-action complaint alleging that VyStar had breached its contracts and unjustly enriched itself through its overdraft fee policies, and that these practices violated Regulation E of the Electronic Fund Transfers Act.

Because Plaintiffs disputed that they had agreed to arbitrate, the district court held a bench trial to determine whether an arbitration agreement existed. After the trial, the court concluded that VyStar had failed to prove the formation of a valid arbitration agreement under Florida state law. On appeal, VyStar maintains that the district court got it wrong for several reasons. But we are not persuaded, so we affirm.

## I.

The district court made several factual findings. Those findings are not disputed, so we summarize them here.

When Plaintiffs opened their personal (Ransom) or business (All Jakd Up) deposit accounts with VyStar, the relevant Membership Agreements did not contain any terms relating to arbitration or waiver of class remedies. Still, the Agreements provided that they "may be amended from time-to-time," and VyStar periodically changed terms. VyStar's practice was to provide notice of

changes to the Agreements through attachments to the members' account statements.

On July 1, 2021, VyStar unilaterally amended the Membership Agreements to include a new "Arbitration Provision and Class Action Waiver" ("Arbitration Provision"s), which required binding individual arbitration for any account-related disputes with VyStar raised after that date. VyStar attached a notice of this change in terms ("Arbitration CIT" or "CIT") to its members' monthly account statements over two months in the first half of 2021. The CIT was attached to All Jakd Up's April 2021 and May 2021 statements, and to Ransom's May 2021 and June 2021 statements. In contrast to prior notices of changes in terms, the Arbitration CIT provided the right to opt-out, with no loss of account access or benefit, before the effective date. Plaintiffs did not see the CIT and were not aware of the Arbitration Provision until after the July 2021 deadline had passed.

Because Plaintiffs had opted to receive statements and other communications electronically, the Arbitration CIT was viewable by accessing Plaintiffs' monthly statement during the two-month notice period and scrolling down past the final page of their statement of account. Apart from attaching the CIT to the statement as part of a single .pdf document, however, VyStar gave zero notice of the offer to arbitrate and waive class remedies. Rather, VyStar sent the same emails it usually sent when notifying members that their monthly statements were available. Nothing in the emails, the online-banking system, or the statements themselves indicated

there that was a change in the Membership Agreements, that a notice was attached to the statement, or that the member could take some action regarding account terms.

The Membership Agreements required Plaintiffs to examine their periodic statements of account promptly and report any unauthorized signatures, alterations, forgeries, or other errors. Also, in opting to receive their statements electronically, Plaintiffs agreed to "E-Statement and E-Notice Terms and Conditions" ("E-Statement Agreement"), which provided that VyStar "may notify [members] through email when updated disclosures and agreements are available," and that it was the member's responsibility to "regularly [] check for Electronic Communications" from VyStar. Such communications included both "notices" ("the electronic version of notices, disclosures and communications related to your account"), and "statements" ("the electronic version of your periodic VyStar account statements and credit card statements"). "When statements, notices and/or disclosures are available," according to the E-Statement Agreement, "you will receive an email message, along with instruction on how to access them."

## II.

Based on these undisputed facts, the district court determined that VyStar failed to give Plaintiffs proper notice of the existence of the offer to arbitrate to allow them to exercise their right to opt out. The court found that VyStar failed to comply with its own notice obligations in the E-Statement Agreement, since VyStar never gave notice or "instructions on how to access" the

arbitration "notice," even if the emails referenced "statement[s]" to which the notice was attached. And VyStar otherwise failed to provide any "indication that there was any offer or addition of new terms, change in terms, or of any need to act," according to the court.

The district court rejected VyStar's contention that Plaintiffs should be charged with notice of the Arbitration CIT, based on their admitted duty to review "statements" promptly. As the court saw things, this duty did not extend to reviewing "notices" that might be attached to those statements. While VyStar pointed to its history of providing notice of changes in a similar way, the court observed that the Arbitration CIT was different than prior notices of changes in terms because VyStar offered its members the opportunity to opt out of the arbitration provision. Thus, in the court's view, the CIT reflected not just a change to the agreements "but also an offer to enter into (or opt out of) a new agreement (contract) to arbitrate." Without adequate notice of that offer, the court concluded, Plaintiffs' silence, their failure to opt out, and their continued use of their accounts could not be treated as assent. Accordingly, the court refused to compel arbitration of the dispute. VyStar now appeals.

### III.

We review de novo the denial of a motion to compel arbitration. *Reiterman v. Abid*, 26 F.4th 1226, 1231 (11th Cir. 2022). We review any underlying factual findings for clear error. *Id.*

Before compelling arbitration under the Federal Arbitration Act ("FAA"), the district court "must determine whether the parties formed a contract containing an arbitration clause." *Id.* at 1232. If the party opposing arbitration does not request a jury trial on that issue, it is "for the court to 'hear and determine'" through a bench trial, as occurred here. *Id.* at 1233 (quoting 9 U.S.C. § 4).

"The threshold question of whether an arbitration agreement exists at all is simply a matter of contract." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016). No presumption of arbitrability applies to disputes concerning whether an agreement to arbitrate has been made. *Id.* Thus, the existence of an agreement to arbitrate under the FAA is governed by state law. *Id.* at 1329–30. Both parties agree that Florida contract law applies.

As the party seeking to enforce the alleged arbitration agreement, VyStar bore the burden of proving the existence of that agreement. *UATP Mgmt., LLC v. Barnes*, 320 So. 3d 851, 857 (Fla. 2d DCA 2021). "[N]o party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate." *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999). Ordinary principle of contract formation apply, including "notice and assent." *Miami Dolphins, Ltd. v. Engwiller*, 410 So. 3d 685, 688 (Fla. 3d DCA 2025). Thus, VyStar has the "burden of proving an acceptance of arbitration as a contractual remedy." *Steve Owren, Inc. v. Connolly*, 877 So. 2d 918, 920 (Fla. 4th DCA 2004).

"[W]e evaluate the existence of assent by analyzing the parties' agreement process in terms of offer and acceptance." *Kolodziej*

*v. Mason*, 774 F.3d 736, 741 (11th Cir. 2014). Parties can manifest assent "by written or spoken word" or "through conduct." *Miami Dolphins*, 410 So. 3d at 688. But conduct generally cannot manifest assent unless the party "knows or has reason to know that the other party may infer from his conduct that he assents." *Id.* (quoting (Restatement (Second) of Contracts § 19 (Am. L. Inst. 1981)); *see, e.g.*, *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1375–76 (11th Cir. 2005) (holding that "continued employment" manifested assent where the employees had received "clear notice" that continued employment meant acceptance of an arbitration agreement). Thus, the key question is whether Plaintiffs had adequate notice of the arbitration provision, such that they had reason to know that VyStar would infer from their failure to opt out that they assented to the change in terms.

VyStar maintains that it provided adequate notice of the arbitration-provision change by making it accessible to Plaintiffs through their statements on its banking platform. VyStar contends that Plaintiff had an obligation to review the entirety of their statements, including any attachments, and that the Arbitration CIT otherwise provided conspicuous and clear notice of the Arbitration Provision. And the district court legally erred, in VyStar's view, by minimizing Plaintiffs' obligation to review their statements, while maximizing VyStar's notice obligations.

Here, the district court did not err in finding that VyStar failed to prove the existence of a binding arbitration agreement. The record is undisputed that VyStar did not provide Plaintiffs any

notice of the Arbitration Provision apart from attaching the Arbitration CIT to monthly statements over a two-month period in the first half of 2021. Although the CIT itself is clear and conspicuous regarding the Arbitration Provision, we see nothing to suggest that Plaintiffs knew or should have known that VyStar would provide notice of optional terms in this way.

We disagree with VyStar that Plaintiffs should be charged with notice of the Arbitration CIT based on their duty to examine their statements. Ransom's Membership Agreement explained that VyStar would provide a "periodic statement of transactions and activity on your account," and that she was "responsible for promptly examining each statement" and reporting any irregularities. Similarly, All Jakd Up's Agreement said, "You must examine your statement with 'reasonable promptness,'" and report any unauthorized transactions or other errors. Thus, the "statement" referred to in each Agreement is the "statement of account," or the "periodic statement of transactions and activity," not just anything that might be appended behind that statement in the same .pdf document.

That interpretation, moreover, is supported by the E-Statement Agreement, which distinguishes between "statements" and "notices." The evidence shows that Plaintiffs received notice that they had "statements." An examination of the face of those statements, however, would not have alerted Plaintiffs to the existence of the attached "notices" regarding arbitration. Nothing in the full statements of account, or the steps Plaintiffs would have taken to

access those statements electronically, alerted them that such a notice was available or provided "instruction[s] on how to access" it, as outlined in the E-Statement Agreement. *Cf. Land. v. IU Credit Union*, 218 N.E.3d 1282, 1289 (Ind. 2023) (holding that a credit union provided adequate notice of its offer to add an arbitration provision through an addendum to the monthly statement, where the statement itself "clearly referenced" the addendum).

VyStar points out that it would have been easy for Plaintiffs to scroll down past the statements and see the Arbitration CIT, which was otherwise conspicuous. But the mere fact that contract terms may be accessible is not enough. *Cf. Miami Dolphins*, 410 So. 3d at 689 (reasoning that terms and conditions for websites must be "conspicuous enough to put a reasonably prudent person on inquiry notice") (quotation marks omitted). All Jakd Up's owner testified that VyStar often attached "garbage stuff" behind the monthly statement. And while VyStar may have provided a similar form of notice for prior changes in terms, the Arbitration CIT was unique in that it offered an opportunity to opt out of the change while retaining account access and benefits. We cannot say that Plaintiffs' silence and inaction in these circumstances, in the absence of any other evidence of notice, amounted to acceptance of the Arbitration Provision.

We decline VyStar's invitation to speculate about the sufficiency of any prior notice or of alleged "impractical results" of the district court's ruling. As the party seeking to compel arbitration,

VyStar bore the burden of establishing the existence of the agreement to arbitrate, including proving that Plaintiffs had manifested assent to that agreement. *See Barnes*, 320 So. 3d at 857; *Steve Owren*, 877 So. 2d at 920.

After holding a bench trial, the district court, applying state law contract formation principles, concluded that no arbitration agreement existed because VyStar had not shown that Plaintiffs' silence and inaction amounted to acceptance of the offer to arbitrate disputes and waive class remedies. And for all the reasons we have already explained, we think the district court got it right.[1] The district court did not opine on the validity of any other change in term, and neither do we.

For these reasons, we affirm the district court's refusal to compel arbitration.

**AFFIRMED.**

---

[1] We reject VyStar's argument that the district court contravened federal arbitration law by applying a heightened notice standard to the agreement to arbitrate. Even assuming the court made comments along these lines during a hearing, our review is based on the reasons provided by the court in its order refusing to compel arbitration, and those reasons were grounded in state contract law, not any heightened notice requirement. In any case, any error by the district court in this regard is harmless, because our review of the relevant issues is de novo. *See Reiterman*, 26 F.4th at 1231.