ORFINGER, J.
Fi-Evergreen Woods, LLC, Themis Health Management, Airamid Health Management, and Debra Howe (collectively, “Appellants”) appeal an order denying their motion to compel arbitration. This Court has jurisdiction. Fla. R.App. P. 9.130(a)(3)(C)(iv). We reverse and remand for an evidentiary hearing.
Virginia Vrastil was admitted to Evergreen Woods nursing home, a facility owned or operated by Appellants. Mary Ellen Gill, Vrastil’s daughter and attorney in fact, signed the admissions paperwork on Vrastil’s behalf. Appellants contend the admissions paperwork included an arbitration agreement, and proffered what they asserted was the agreement between the parties. The proffered arbitration agreement, while signed, was not dated the day Vrastil arrived, and did not name Vrastil or Evergreen Woods.[1] Appellants contend that the proffered agreement binds the parties and requires arbitration under the American Arbitration Association (“AAA”) Commercial Arbitration Rules or the JAMS Comprehensive Arbitration Rules. It further provides, in part, that:
[A]ny and all legal controversies, claims or disputes arising out of, related to, or in connection with this contract, including but not limited to all questions regarding issues of jurisdiction, the existence, scope, validity, performance, interpretation, termination an amendment thereto or breach hereof, between the undersigned Resident ... and the Facility will be resolved by BINDING ARBITRATION.
The arbitration agreement covers a wide variety of claims, including all rights pursuant to the Admission Agreement ... whether arising out of State or Federal law, whether existing or in the future, for any and all negligence, breach of contract, common law, tort or statutory claims for statutory, compensatory or punitive damages arising out of the relationship between the Resident and the Facility, including but not limited to ... those rights that may be available under Florida Statutes §§ 400.22, 400.023, 400.428, 400.429, 415.1111 ... [except claims which could be pursued in small claims court].
Following Vrastil’s death, Gill, as personal representative of Vrastil’s estate (“Appellee”), sued Appellants for negligence and wrongful death based on alleged violations of sections 400.22 and 400.23, Florida Statutes (2010), breach of fiduciary duty, and violations of section 415.1111, Florida Statutes (2010). Appellants moved to stay the proceedings and to compel arbitration. Appellee filed a memorandum in opposition, attaching several documents, including the JAMS fee schedule and rules, and several redacted fee statements purportedly generated in similar, but unrelated cases, showing arbitration costs ranging from $10,000 to $28,000. Appellee also included a statement, dated 2003, ostensibly from AAA, indicating that AAA would no longer arbitrate health care cases “involving individual patients without a post-dispute agreement to arbitrate.” Ap-pellee argued that the proffered arbitration agreement was an “unauthenticated hearsay document”; there was “no valid, enforceable arbitration agreement” between Vrastil and Appellants; the references to AAA and JAMS rules made the agreement invalid; the special rules governing discovery and allocating fees were against public policy; and the offending clauses were not severable. Without conducting a hearing and without explicitly *862 determining whether the arbitration agreement had been entered into, the trial court denied the motion to compel arbitration, ruling that the proffered arbitration agreement limited the statutory remedies available to an injured nursing home resident, and, as a result, was void as against public policy. This appeal followed.
Orders denying motions for arbitration are reviewed de novo, except that factual findings are reviewed for support by competent, substantial evidence. E.g., Best v. Educ. Affiliates, 82 So.3d 143, 145 (Fla. 4th DCA 2012). Appellants assert that the trial court erred when it denied the motion to compel arbitration without first holding an evidentiary hearing, as required by section 682.03(1), Florida Statutes (2012). That section provides:
A party to an agreement or provision for arbitration subject to this law claiming the neglect or refusal of another party thereto to comply therewith may make application to the court for an order directing the parties to proceed with arbitration in accordance with the terms thereof. If the comt is satisfied that no substantial issue exists as to the making of the agreement or provision, it shall grant the application. If the court shall find that a substantial issue is raised as to the making of the agreement or provision, it shall summarily hear and determine the issue and, according to its determination, shall grant or deny the application.
§ 682.03(1), Fla. Stat. (2012) (emphasis added).[2] A plain reading of the statute supports Appellants’ position. When there is no question “as to the making of the agreement or provision,” the motion should be granted, but if, as here, there is a “substantial issue,” then at least a summary hearing is needed. § 682.03(1), Fla. Stat. (2012); see, e.g., Crystal Motor Car Co. of Hernando, LLC v. Bailey, 24 So.3d 789, 791 (Fla. 5th DCA 2009) (reversing denial of motion to compel arbitration for failure to hold evidentiary hearing when nonmovant claimed agreement was never signed and signature on document was forgery). The hearing should occur “before the trial court can reach a decision regarding [the] validity of the arbitration provision.” Rowe Enters. LLC v. Int'l Sys. & Elecs. Corp., 932 So.2d 537, 541 (Fla. 1st DCA 2006). It was error to fail to hold the hearing required by section 682.03(1). See Tandem Health Care of St. Petersburg, Inc. v. Whitney, 897 So.2d 531, 532-33 (Fla. 2d DCA 2005) (reversing denial of motion to compel for failure to hold evidentiary hearing where nonmovant disputed existence of agreement to arbitrate and requested hearing).
Because remand is necessary, we address Appellee’s claim that the arbitration agreement is void as against public policy. A trial court’s decision regarding whether an arbitration agreement or provision is void as against public policy presents “a pure question of law, subject to de novo review.” Shotts v. OP Winter Haven, Inc., 86 So.3d 456, 471 (Fla.2011).
Relying on Shotts, the trial court found that the proffered arbitration agreement was void as against public policy because it required arbitration under the AAA or JAMS rules. In Shotts, the supreme court held that, in the context of Florida nursing homes and assisted living facilities, contractual limits on noneconomic damages and the elimination of, or imposition of obstacles to, punitive damages were against public policy because they eroded access to the specific remedies provided by sections 400.022 and 400.023. 86 So.3d at *863 474-75. The court noted that the arbitration agreement in that case broadly incorporated the AHLA[3] rules, one of which altered, to the plaintiffs detriment, the availability of punitive damages authorized by section 400.023. Id. at 476-77. Because the agreement in Shotts lacked a clause requiring Florida law to replace invalid provisions, and the various limits on damages went “to the very essence of the agreement,” the objectionable portions could not be severed and the entire agreement was held to be void.[4] Id. at 478. Importantly, however, the Shotts court did not hold that simply adopting the rules of an arbitration association necessarily rendered an arbitration agreement void as against public policy.[5]
In the present case, the proffered arbitration agreement required the use of either the AAA or the JAMS rules. Both parties agree that the AAA rules were not considered below, leaving the trial court to consider only a proffered version of the JAMS rules.[6] Unlike the AHLA rules in Shotts, the JAMS rules have no restrictions on punitive damages, caps on noneco-nomic damages, or changes in the required burden of proof. Additionally, JAMS Rule 4 provides:
Rule 4. Conflict with Law
If any of these Rules, or modification of these Rules agreed on by the parties, is determined to be in conflict with a provision of applicable law, the provision of law will govern over the Rule in conflict, and no other Rule will be affected.
Consequently, if any JAMS rule violates Florida public policy, unlike the AHLA rules in Shotts, JAMS Rule 4 may save the arbitration agreement (assuming one exists) from being invalidated. See Wilks v. Pep Boys, 241 F.Supp.2d 860, 863-64 (M.D.Tenn.2003) (noting that JAMS Rule 4 could save arbitration agreement from being invalidated when particular arbitration rule conflicts with substantive statutory right); see also Thomas & King, Inc. v. Jaramillo, 2009 WL 649073, slip op. at 12 (E.D.Ky. Mar. 10, 2009).
The trial court further relied on Shotts to find the arbitration agreement violated public policy because it limited the plaintiffs statutory remedies. However, the proffered arbitration agreement does not contain the language limiting compensatory or punitive damages that the Shotts court found to be invalid. Only section 12 of the agreement addresses damages, and it requires a preliminary “reasonable showing by evidence” of a “reasonable basis for recovery” of punitive damages, which “may only be awarded based on clear and convincing evidence and pursuant to Florida law.” This provision is consistent with section 400.0237, Florida Statutes (2010), which provides, in pertinent part:
(1) In any action for damages brought under this part, no claim for punitive *864 damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages....
[[Image here]]
(4) The plaintiff must establish at trial, by clear and convincing evidence, its entitlement to an award of punitive damages. The “greater weight of the evidence” burden of proof applies to a determination of the amount of damages.
While the proffered arbitration agreement does not speak to the use of “the greater weight of the evidence” standard to determine the amount of punitive damages as required by section 400.0237(4), it does not require to the contrary. Indeed, the proffered agreement is silent on the burden of proof needed to prove the amount of punitive damages which an injured person is entitled to recover. Further, section 2 of the proffered arbitration agreement provides that it is to “be governed and interpreted in accordance with the laws of Florida.” Likewise, section 18.C. of the proffered arbitration agreement permits invalid or unenforceable provisions or parts of provisions to be severed, leaving the remainder of the agreement intact. Therefore, even if section 12 violated public policy (which it does not appear to do), it would be severable and would not invalidate the entire arbitration agreement. See Estate of Deresh ex rel. Schneider v. FS Tenant Pool III Trust, 95 So.3d 296, 301 (Fla. 4th DCA 2012) (reviewing Shotts and holding that when arbitration agreement contained severability clause, invalid punitive damages limitation could be severed from arbitration agreement). Thus, we conclude that none of the grounds relied upon by the trial court support its finding that the proffered arbitration agreement was void as against public policy-
Nevertheless, Appellee submits two additional bases for finding the proffered arbitration agreement unenforceable. Ap-pellee points to the proffered agreement’s extensive rules governing and limiting discovery. However, Appellee fails to explain how these procedures violate public policy, referring only to the concurring opinion in ManorCare Health Services, Inc. v. Stiehl, 22 So.3d 96, 102-03 (Fla. 2d DCA 2009), for the proposition that “[t]he arbitration agreement does not explain that the resident is avoiding crowded court dockets and lengthy appeals by agreeing to procedures that significantly reduce the resident’s ability to prevail in the dispute.” But, the majority in Stiehl held that the validity of the discovery provisions found in an arbitration agreement was generally an issue to be decided by the arbitrator, and reversed the lower court’s denial of a motion to compel arbitration. 22 So.3d at 100-01. More importantly, Appellee never raised this argument below, and we will not consider it for the first time on appeal.
Finally, relying on Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), Appellee argues that the high costs of JAMS arbitration, along with a cost-splitting provision in the agreement, and Appellee’s lack of funds, make the arbitration agreement unenforceable. In Green Tree, the Supreme Court wrote that “the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights in the arbitral forum.” 531 U.S. at 90, 121 S.Ct. 513. However, the Court went on to say that the mere “risk” of prohibitive costs was too speculative to render an arbitration agreement unenforceable, id. at 91, 121 S.Ct. 513. The party seeking to invalidate an arbitration agreement due to prohibitive costs, “bears the burden of showing the likelihood of incurring such costs,” *865 id. at 92, 121 S.Ct. 513. and must show that enforcement of the agreement would preclude the objecting party from effectively vindicating a statutory right in the arbitral forum, id. at 90, 121 S.Ct. 513. In the instant case, Appellee relies on the JAMS fee schedule and on unauthenticated statements from parties in other cases. This information, by itself, is insufficient to find arbitration too burdensome in the present case. Green Tree, 531 U.S. at 91, 121 S.Ct. 513.[7]
For these reasons, based on the limited record before this Court, the trial court’s order denying the motion to compel arbitration is reversed and remanded for further proceedings.
REVERSED and REMANDED.
PALMER and BERGER, JJ., concur.

. The spaces for the names of the facility and resident were blank.

. Effective July 1, 2013, Chapter 682 has been substantially rewritten. Ch. 2013-232, Laws of Fla.

. American Health Lawyers Association.

. Unlike the agreement in Rent-A-Center, West, Inc. v. Jackson, — U.S. -, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010), the agreement in Shotts did not have a delegation clause. Shotts, 86 So.3d at 478-80.

. The analysis in Shotts is comparable to the Florida Supreme Court’s recent decision in Franks v. Bowers, 116 So.3d 1240 (Fla.2013). In Franks, the court invalidated an arbitration clause due to specific contractual limitations of statutorily created remedies for a particular class of plaintiffs. Once again, the analysis required a comparison of the contractual provision in question to the relevant statute as we have done in this case.

. The version of the JAMS rules that Appellee submitted to the trial court are part of the appendix filed with this Court. While Appel-lee furnished these rules to the trial court, they were not authenticated or admitted into evidence.

. Although a provision that requires both parties to equally share all fees and costs associated with arbitration can render an agreement unenforceable, Flyer Printing Co. v. Hill, 805 So.2d 829, 833 (Fla. 2d DCA 2001), the fees provision in the instant case generally requires both parties to bear their own attorney’s fees and costs, excepting arbitrator expenses and discovery ordered by the arbitrator. "[A]n arbitration agreement is not unenforceable merely because it may involve some 'fee-shifting.' " Musnick v. King Motor Co. of Fort Lauderdale, 325 F.3d 1255, 1259 (11th Cir.2003). "[A]t this point [p]laintiff has not been assessed with any fees, nor is it certain that [it] ever will be." Id. at 1260.