IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

PALM GARDEN OF HEALTHCARE
HOLDINGS, LLC, PALM GARDEN
HEALTHCARE MANAGEMENT, LLC
AND PALM GARDEN OF ORLANDO,

  Appellants,

 v.             Case No. 5D16-2568

VALERIE HAYDU AS POWER OF
ATTORNEY FOR JAMES YONGUE,

  Appellee.

_____/

Opinion filed January 20, 2017

Non-Final Appeal from the Circuit Court
for Orange County,
John Marshall Kest, Judge.

Kristen K. Ullman and Amy D. Prevatt, of
Lewis Brisbois Bisgaard & Smith, LLP,
Tampa, for Appellants.

Ian P. Depagnier and Jason A. Paul, of
Paul & Perkins, P.A., Orlando, for Appellee.


LAMBERT, J.

  Palm Garden of Orlando, LLC, and Palm Healthcare Management, LLC,

(collectively "Appellants") appeal the trial court's nonfinal order denying their motion to

compel arbitration against Appellee, Valerie Haydu ("Haydu"), as Power of Attorney for

James Yongue ("Yongue"). The court, following an evidentiary hearing, found that there had not been a "sufficient showing" to establish that either Yongue or Haydu, acting on behalf of and with the consent of Yongue, had entered into a binding arbitration agreement.[1] We affirm.

On January 8, 2015, Yongue was released from an Orlando hospital to be directly admitted to the Palm Garden of Orlando nursing home facility. The following day, Haydu executed an agreement prepared by Appellants, admitting Yongue as a resident to the nursing home. Contained within this admissions agreement was an optional arbitration agreement, waiving Yongue's right to a trial by jury and agreeing to binding arbitration.

On January 11, 2015, Yongue suffered a "major aspirational event" at the nursing home and was transported to a local hospital. Yongue never returned to the nursing home. Haydu subsequently obtained power of attorney from Yongue and filed suit on his behalf against Appellants, alleging that this hospitalization and Yongue's injuries and damages were proximately caused by Appellants' negligent care and treatment of Yongue while a resident at the nursing home. In response, Appellants moved to compel arbitration, arguing that Yongue gave verbal and written consent to Haydu to sign the admissions agreement containing the arbitration agreement on his behalf,[2] thereby binding Yongue to resolve his claims against Appellants through arbitration.

The evidence presented at the hearing on the motion to compel arbitration consisted of the depositions of Haydu and Jasper Buzon ("Buzon"), the admissions

---

[1] We have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iv).

[2] Yongue's dominant arm and hand were immobilized in a cast due to injuries he had sustained in an earlier fall.

director for the nursing home,[3] a few documents, including the admissions agreement, and live testimony from Buzon. Yongue did not testify nor was he deposed prior to the hearing because, as acknowledged by the parties, the "aspirational event" he suffered on January 11, 2015, prohibited him from verbally communicating. In the order on appeal, the trial court discussed the evidence presented from both parties and, in denying the motion, held that a binding agreement for arbitration had not been entered into by Yongue or by Haydu on Yongue's behalf.

Appellate review of whether a trial court erred in denying a motion to compel arbitration presents "a mixed question of law and fact." *Fonte v. AT&T Wireless Servs., Inc.*, 903 So. 2d 1019, 1023 (Fla. 4th DCA 2005) (quoting *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 283 (Fla. 1st DCA 2003)). "Orders denying motions for arbitration are reviewed de novo, except that factual findings are reviewed for support by competent, substantial evidence." *Fi-Evergreen Woods, LLC v. Estate of Vrastil*, 118 So. 3d 859, 862 (Fla. 5th DCA 2013) (citing *Best v. Educ. Affiliates, Inc.*, 82 So. 3d 143, 145 (Fla. 4th DCA 2012)).

Three elements are considered by the court under the Revised Florida Arbitration Code[4] when ruling on a motion to compel arbitration: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999) (citation omitted). Here, only the first element is at issue. Appellants, as the proponents of arbitration, have the burden of establishing an enforceable written

---

[3] Buzon's position was renamed to Director of Guest Services.

[4] Chapter 682, Florida Statutes (2015).

agreement to arbitrate. *See Steve Owren, Inc. v. Connolly*, 877 So. 2d 918, 920 (Fla. 4th DCA 2004) (citing *Shearson Lehman Hutton, Inc. v. Lifshutz*, 595 So. 2d 996, 997 (Fla. 4th DCA 1992)).

The evidence before the trial court on whether there was an enforceable agreement to arbitrate and the circumstances surrounding the execution of the admissions agreement was conflicting. Haydu acknowledged that she signed the agreement but testified that she did so only after a telephone conversation with Buzon, during which Buzon advised her that the agreement would be left in Yongue's room and needed to be executed for Yongue to continue receiving his medication and treatment. Haydu also testified that she advised Buzon that she had no power of attorney or other authority given to her by Yongue to execute the agreement on his behalf. In contrast, Buzon testified that he would have explained the admissions agreement to both Yongue and Haydu and that Yongue gave verbal consent for Haydu to sign the agreement on his behalf, as evidenced by Yongue's signature on the document directly above Haydu's and Buzon's signatures as witnesses, acknowledging that he had given verbal consent to Haydu to sign the admissions agreement on his behalf. Haydu, however, testified that: (1) she did not recognize the signature on the agreement to be that of her father's; (2) when she signed the agreement in her father's dimly-lit room, Buzon was not present, and Yongue was either sleeping or falling asleep; and (3) she did not know why Yongue did not sign the agreement.

What is undisputed and found by the court is that Yongue was competent to decide whether to give Haydu the authority to execute the admissions agreement on his behalf. In the order on appeal, the court found the evidence was insufficient to establish that

4

Yongue had entered into a binding agreement for arbitration. However, even if Yongue did not sign the agreement, a nonsignatory to an arbitration agreement is bound to the agreement "when the signatory . . . is authorized to act as the agent of the person sought to be bound." *Stalley v. Transitional Hosps. Corp. of Tampa, Inc.*, 44 So. 3d 627, 630 (Fla. 2d DCA 2010); *see also Fi-Evergreen Woods, LLC v. Estate of Robinson*, 172 So. 3d 493, 495 (Fla. 5th DCA 2015). In addressing whether Haydu was authorized by Yongue to execute this agreement, the trial court found that it was undisputed that Haydu did not have a legal power of attorney from Yongue to execute documents on his behalf. While accurate,[5] this is not dispositive because the appropriate analysis in determining whether the nonsignatory (Yongue) is bound by the actions of the signatory (Haydu) is dictated by "ordinary principles of contract law and agency." *Stalley*, 44 So. 3d at 630 (quoting *Martha A. Gottfried, Inc. v. Paulette Koch Real Estate, Inc.*, 778 So. 2d 1089, 1090 (Fla. 4th DCA 2001)). As explained by the court in *Stalley*:

> An agency relationship can arise by written consent, oral consent, or by implication from the conduct of the parties. *See Thomkin Corp. v. Miller*, 156 Fla. 388, 24 So. 2d 48, 49 (1945). An agency by implication, or apparent agency, arises only when there has been (1) a representation by the principal that the actor is his or her agent, (2) reliance on that representation by a third party, and (3) a change in position by the third party in reliance on that representation. *See Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995).

*Id.*

Although Appellants presented evidence suggesting that Haydu was acting as Yongue's agent when she signed the admissions agreement, there was also evidence

---

[5] Yongue eventually gave Haydu power of attorney to act on his behalf, but this occurred well after Yongue left the nursing home.

5

before the court that: (1) Yongue did not sign this agreement, (2) Haydu was not authorized by nor did Yongue give his consent to Haydu to execute this agreement on his behalf, (3) Haydu specifically advised Appellants that she had no authority to sign documents on behalf of Yongue, and (4) Buzon has no independent recollection of either Yongue or the execution of the admissions agreement. The trial court specifically found that the admissions agreement "was not explained to Mr. Yongue nor was his consent requested" and that no legal authority had been given by him to Haydu to make decisions regarding arbitration. "[W]hen there has been no representation of authority *by the principal*, no apparent or implied agency arises," and "[t]he acts of the agent, standing alone, are insufficient to establish that the agent is authorized to act for the principal." *Id.* (citing *Smith v. Am. Auto. Ins. Co.*, 498 So. 2d 448, 449 (Fla. 3d DCA 1986) (additional citations omitted)).

Thus, while the trial court's order analyzed the evidence in the context of the lack of a power of attorney, rather than the existence of an agency relationship between Yongue and Haydu, there is sufficient record evidence that supports the court's express finding in the appealed order that no binding arbitration agreement exists. *Cf. Sovereign Healthcare of Tampa, LLC v. Estate of Yarawsky, ex. rel. Yarawsky*, 150 So. 3d 873, 876–78 (Fla. 2d DCA 2014) (holding that an arbitration provision included in a resident admission and financial agreement was not enforceable against the resident's estate where the resident did not sign the agreement and the resident's wife, who signed the agreement only in her capacity as the responsible party, did not have the authority to sign the agreement on her husband's behalf); s*ee also Robertson v. State*, 829 So. 2d 901, 906 (Fla. 2002) (stating that the "tipsy coachman" doctrine "allows an appellate court to

affirm a trial court that 'reaches the right result, but for the wrong reasons' so long as 'there is any basis which would support the judgment in the record'" (quoting *Dade Cty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 644–45 (Fla. 1999))).

AFFIRMED.

PALMER and TORPY, JJ., concur.