# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2024-1771
LT Case No. 2023-CA-001454

_____

DOLPHIN POINTE HEALTH CARE,
LLC d/b/a/ Dolphin Pointe
Health Care Center and Clear
Choice Health Care, LLC,

      Appellants,

      v.

JOSEPH MORAVIA, as Personal
Representative of the Estate of
Jacques Moravia,

      Appellee.

_____

Nonfinal appeal from the Circuit Court for Duval County.
Waddell A. Wallace, III, Judge.

Brian M. Bursa and Randall J. Thorn, of Ullman Bursa Law,
Tampa, for Appellants.

Andrew A. Harris and Grace Mackey Streicher, of Harris
Appeals, P.A., Palm Beach Gardens, and Brian Moore, of Baggett
Law, Inc., Jacksonville, for Appellee.

May 11, 2026

SOUD, J.

Appellants Dolphin Pointe Health Care, LLC, d/b/a Dolphin Pointe Health Care Center, and Clear Choice Health Care, LLC, appeal the trial court's denial of their motion to compel arbitration of Appellee Joseph Moravia's nursing home wrongful death action brought on behalf of his deceased father Jacques Moravia. We have jurisdiction. *See* Art. V, § 4(b)(1), Fla. Const.; Fla. R. App. P. 9.130(a)(3)(I). We affirm.

I.

Joseph Moravia, as personal representative of his father Jacques Moravia's estate, sued Dolphin Pointe and Clear Choice alleging his father died as a result of abuse and neglect while a resident at their nursing home. In response, Dolphin Pointe and Clear Choice moved to compel arbitration based on an arbitration provision within the Resident Admission and Financial Agreement signed by Jacques Moravia.

The trial court held a hearing at which witnesses testified and various records were received into evidence. As found by the trial court, Jacques Moravia was picked up by the Jacksonville Sheriff's Office in a confused state wandering down the road on December 5, 2021. Law enforcement officers took him to a nearby hospital. Ultimately, Jacques Moravia was discharged from the hospital on December 15, 2021, with a diagnosis of likely dementia with behavioral disturbances. He was then admitted to Dolphin Pointe Health Care that same day with a diagnosis of dementia or cognitive impairment.

The next day, Jacques Moravia was seen by Louella Marinos, APRN, who documented that he "was agitated, scared, upset, had poor concentration, and required refocusing. He asked her to call his son [Joseph Moravia, Jacques's power of attorney] to answer her questions. Ms. Marinos diagnosed [Jacques] Moravia with unspecified dementia." On the same day he saw Marinos, Jacques Moravia signed the admission paperwork that included the arbitration agreement.

Joseph Moravia testified that when his father arrived at Dolphin Pointe, his "mentation was waxing and waning." Jacques Moravia at times "said things that made sense, but then would

2

make references to his deceased wife as if she was still alive." The trial court found Joseph Moravia's testimony "persuasive."

Based on these findings, the trial court concluded that Joseph Moravia "proved by the greater weight of the evidence that [Jacques Moravia] lacked the mental capacity to enter into the arbitration agreement." As a result, the court denied the motion to compel arbitration.

It is from this decision that Dolphin Pointe and Clear Choice appeal.

II.

We review de novo a trial court's ruling on a motion to compel arbitration. *See Palm Garden of Healthcare Holdings, LLC v. Haydu*, 209 So. 3d 636, 638 (Fla. 5th DCA 2017). As we do so, the factual findings upon which the trial court bases its decision are reviewed for competent, substantial evidence. *See id.*; *see also Fi-Evergreen Woods, LLC v. Est. of Vrastil*, 118 So. 3d 859, 862 (Fla. 5th DCA 2013).

Dolphin Pointe and Clear Choice urge that arbitration has long been favored in the law. While this well-known principle is true, *see Calvert v. Surrency*, 395 So. 3d 705, 707 (Fla. 5th DCA 2024) ("Generally, Florida courts favor arbitration agreements." (citing *Walsh Grp. v. Zion Jacksonville, LLC*, 379 So. 3d 571, 574 (Fla. 5th DCA 2024))), that does not end our analysis.

When deciding a motion to compel arbitration, a court considers three issues: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." *Palm Garden of Healthcare Holdings, LLC*, 209 So. 3d at 638 (quoting *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999)). This appeal is resolved on the first of those issues.

In deciding whether a valid written agreement to arbitrate exists, we generally look to ordinary principles of Florida law that govern the formation of contracts. *See Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574 (Fla. 1st DCA 1999) ("[T]he validity of an arbitration clause is . . . an issue of state contract law."). Specific

3

to the case before us, where the mental capacity of Jacques Moravia is at issue, Florida law presumes a contracting person is competent. *See Saliba v. James,* 196 So. 832, 835 (Fla. 1940). This presumption may be overcome only when the party challenging the arbitration agreement establishes by a preponderance of the evidence that the contracting person was incapable of comprehending the nature and effect of the agreement. *See Gilmore v. Life Care Ctrs. of Am., Inc.*, No. 2:10-cv-99-FtM-29DNF, 2010 WL 3944653, at *3 (M.D. Fla. Oct. 7, 2010), *aff'd*, 448 F. App'x 909 (11th Cir. 2011) (citing *Saliba* in applying Florida law). Thus, as the trial judge correctly concluded, the burden is on Joseph Moravia to establish that at the time his father signed the Resident Admission and Financial Agreement containing the arbitration provision, he did not have the mental capacity to do so.

Here, the trial judge weighed the evidence presented to him and concluded Joseph Moravia had met his burden and established that Jacques Moravia lacked the mental capacity to sign the admission documents that included the arbitration agreement. In a well-reasoned order, the trial court found Jacques Moravia was picked up by the Jacksonville Sheriff's Office in a confused state wandering down the road. After being discharged from a 10-day hospital stay with a diagnosis of likely dementia with behavioral disturbances, he was then admitted to Dolphin Pointe Health Care with a diagnosis of dementia or cognitive impairment. When Jacques Moravia was seen by Dolphin Pointe personnel, he was observed by them to be "agitated, scared, upset, [with] poor concentration, and require[ing] refocusing." At the time Jacques Moravia signed the admission paperwork, his mental capacity was "waxing and waning" to the extent he would at times refer to his deceased wife as if she were still alive at that time.

There is competent substantial evidence in the record before us supporting the trial court's factual findings. Indeed, the trial judge's well-written order points to the evidence upon which his findings rely. As a result, we will not disturb these findings, even if, as Dolphin Pointe and Clear Choice argue, there may exist other evidence in the record that could support a different conclusion. *See C.N. v. I.G.C.*, 291 So. 3d 204, 207 (Fla. 5th DCA 2020) ("It makes no difference that the record may include competent substantial evidence that would support some other result." (citing

4

*Dusseau v. Metro. Dade Cnty. Bd. of Cnty. Comm'rs*, 794 So. 2d 1270, 1275 (Fla. 2001))), *approved*, 316 So. 3d 287 (Fla. 2021).

The trial court's written findings support its conclusion that Jacques Moravia lacked sufficient mental capacity to enter into the arbitration agreement at the time he signed the Resident Admission and Financial Agreement. As a result, denial of the motion to compel arbitration was legally appropriate.

### III.

Accordingly, because competent, substantial evidence exists to support the trial court's findings that decedent Jacques Moravia lacked sufficient mental capacity to sign the arbitration agreement when he was admitted to Dolphin Pointe Health Care Center, the court's order denying Appellants' motion to compel arbitration is AFFIRMED.

It is so ordered.

WALLIS and HARRIS, JJ., concur.

―――――――――――――――

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

―――――――――――――――

5