**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 25-10140

Non-Argument Calendar

_____

YA MON EXPEDITIONS, LLC,

KIP LAMAR SNELL,

*Plaintiffs-Appellees,*

MAGNA CHARTER, LLC, et al.,

*Plaintiffs,*

*versus*

INTERNATIONAL YACHT BROKERS ASSOCIATION,

INC., et al.,

*Defendants,*

YATCO, LLC,

a Florida Limited Liability Company,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:24-cv-20805-KMM

_____

Before JORDAN, KIDD, and BLACK, Circuit Judges.

PER CURIAM:

This interlocutory appeal arises from class-action antitrust litigation concerning an alleged conspiracy in the used yacht resale market to fix and inflate the commissions that sellers of used yachts must pay to brokers representing buyers. The only issue before us in this appeal is whether one of the defendants who allegedly participated in this conspiracy, YATCO, LLC ("YATCO"), can compel the plaintiffs to arbitrate their antitrust claims against it based on an agreement that the plaintiffs' brokers purportedly accepted with YATCO.

The district court concluded that YATCO could not compel arbitration because the plaintiffs were not bound by the arbitration provision in the agreement. After review,[1] we affirm the district court's denial of YATCO's motion to compel arbitration.[2]

_____

[1] "We review *de novo* a district court's denial of a motion to compel arbitration." *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017).

[2] We have jurisdiction under the Federal Arbitration Act to review an interlocutory order "denying a petition . . . to order arbitration to proceed." 9 U.S.C. § 16(a)(1)(B).

## I. BACKGROUND

The plaintiffs in this case are companies and individuals who sold used yachts through brokers at some point from approximately 2020 to 2023.  The plaintiffs filed in the Southern District of Florida four separate class-action complaints alleging antitrust violations against a variety of defendants involved in the used yacht resale market, which the district court consolidated into a single case.  In June 2024, the plaintiffs filed a single, joint complaint in the consolidated case.

In their consolidated class-action complaint, the plaintiffs sued the following defendants for violations of the Sherman Antitrust Act of 1890, 15 U.S.C. § 1: (1) yacht brokerage companies that represented buyers and sellers of used yachts; (2) yacht broker associations that advocated for the interests of and promulgated industry standards for yacht brokers; and (3) companies that owned and operated multiple listing services ("MLS")—online databases that listed used yachts for sale.  YATCO, the appellant in this appeal, is one of the MLS companies.

The plaintiffs alleged that it was typical for those seeking to sell a used yacht to employ a seller broker, who would list the used yacht on MLS websites, communicate with potential buyers, and finalize the sale.  In turn, it was typical for those seeking to buy a used yacht to hire a buyer broker, who would aid the buyer in purchasing the yacht.  The standard industry practice was that the seller would pay both the seller broker's and the buyer broker's commissions as a percentage of the sale price to be split between

them—usually five percent to each broker, for a total of ten percent of the sale price.

The plaintiffs asserted that the defendants violated antitrust laws by conspiring together in an anticompetitive manner to fix and inflate the commissions that sellers of used yachts were required to pay to the buyer brokers. In support of this contention, the plaintiffs alleged first that the broker associations, through rule-making, directed member brokers to cooperate with each other even when they were representing clients with adverse interests, including in negotiating shared commission agreements prior to the submission of an offer to purchase. Second, the plaintiffs alleged that the MLS companies, which the broker associations controlled, only accepted listings of used yachts (1) from professional brokers and (2) when the listing agreed to the seller paying the buyer broker's commission.

Third, the plaintiffs alleged that the brokerage companies had their executives participate in the broker associations to adopt and enforce the anticompetitive commission policies and required their broker employees to comply with those policies when listing used yachts for sale on MLS websites. Fourth, the plaintiffs alleged that all of the defendants conspired together to adopt and enforce the anticompetitive commission policies and practices throughout the industry by means of their overwhelming control of the market. The plaintiffs contended that because of the defendants' conspiracy, prospective sellers were required to hire seller brokers and pay the buyer brokers' inflated commissions.

The plaintiffs' specific antitrust claims were (1) conspiracy to fix the buyer brokers' commissions and (2) concerted refusal to deal with prospective used yacht sellers who were not represented by brokers.  The plaintiffs brought these claims on their own behalf and on behalf of a putative class of plaintiffs: anybody who since February 2020 had sold a used yacht utilizing a broker, listed the yacht for sale on one of the defendants' MLS websites, and paid a broker commission in connection with the sale.  As relief, the plaintiffs sought a declaratory judgment, damages, and an injunction.

In response, YATCO, acting independently of the other defendants, moved to compel arbitration of the plaintiffs' claims against it under the Federal Arbitration Act ("FAA").[3]  YATCO argued that the court should compel the plaintiffs to arbitrate their claims against it based on an arbitration clause in its Software as a Service ("SaaS") Subscription agreement which everybody who used its MLS website was required to accept.  YATCO explained that it did not know the identity of the brokers the plaintiffs used to sell their yachts, but if those brokers had listed the plaintiffs' yachts for sale on YATCO's MLS website, then the brokers must have signed and executed the SaaS agreement.  YATCO asserted that the plaintiffs could not refuse to arbitrate simply because they were not signatories to the SaaS agreement (1) because the plaintiffs' brokers were acting as the plaintiffs' agents when the brokers

---

[3] The other defendants did not file motions to compel arbitration, but instead filed a joint motion to dismiss, which YATCO also joined before the district court granted it leave to file its separate arbitration motion.

signed the SaaS agreement and (2) based on the doctrine of equitable estoppel.

In support of its motion, YATCO submitted a declaration signed by its Chief Technology Officer, who confirmed that any person who listed a boat for sale on YATCO's MLS website would need to sign and execute the SaaS agreement. YATCO also submitted a copy of the SaaS agreement, which the declaration explained "ha[d] been in place since 2020."

The relevant portion of the agreement stated that the parties would attempt to resolve any disputes relating to the agreement or YATCO's services in good faith. However, if the parties could not resolve the dispute in that way, then either party could "initiate binding arbitration as the sole means to resolve claims." The agreement added, "all claims arising out of or relating to the Agreement (including its formation, performance and breach), the parties' relationship with each other and/or your use of the Services shall be finally settled by binding arbitration."

The agreement also contained a provision titled "No Third-Party Beneficiaries." That provision stated, "[t]his Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement."

The plaintiffs responded that they were not bound to arbitrate under the SaaS agreement because they were not parties to

that agreement, and neither agency nor estoppel principles permitted the enforcement of the agreement as to them. Additionally, the plaintiffs asserted that YATCO failed to meet its burden of proving the existence of a written arbitration agreement because YATCO's arguments were based on speculation.

The district court denied YATCO's motion to compel arbitration. The court stated that it was "skeptical" of relying on YATCO's assertions that the plaintiffs' brokers must have executed the SaaS agreement. However, the court explained that, even assuming that the plaintiffs' brokers did validly execute the SaaS agreement, the plaintiffs were not bound by the agreement's arbitration clause.

The court reasoned that the SaaS agreement did not bind the plaintiffs under an agency theory because the agreement explicitly provided that it was "for the sole benefit of the parties hereto" and prohibited assignment of the rights, benefits, and remedies included in the agreement. This was significant because, while the brokers may have executed the SaaS agreement, YATCO failed to establish that an agency relationship existed between the plaintiffs and the brokers at the time the brokers actually executed the agreement. Contrary to YATCO's argument, the terms of the agreement indicated that the brokers executed the agreement for their own benefit, not on behalf of the plaintiffs.

Additionally, the court concluded that the plaintiffs were not estopped from refusing arbitration under the SaaS agreement be-

8                    Opinion of the Court                    25-10140

cause the plaintiffs' claims did not arise out of, relate to, or reference the agreement. It reasoned that the agreement pertained to subscribers to YATCO's services, whereas the plaintiffs' claims alleged antitrust violations "in connection to Defendant's collection of fees."

YATCO timely filed an interlocutory appeal of the denial of its arbitration motion.[4] *See* 9 U.S.C. § 16(a)(1)(B).

## II. DISCUSSION

YATCO argues on appeal that the district court erred by denying its motion to compel arbitration because the plaintiffs are bound to arbitrate their claims under the SaaS agreement even though they were not parties to the agreement based on agency and estoppel principles. The plaintiffs respond that they are not required to arbitrate their claims because they never agreed to arbitration with YATCO, and the SaaS agreement should not be enforced as to them. For the reasons below, we conclude that the district court did not err by denying YATCO's motion to compel arbitration.[5]

---

[4] After YATCO filed its notice of appeal, the district court granted the defendants' joint motion to dismiss without prejudice, providing the plaintiffs leave to amend. Subsequently, however, at our direction, the district court vacated the dismissal order and stayed the entire proceedings pending the resolution of this appeal under *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 738 (2023).

[5] We note that the SaaS agreement contains a delegation clause, which states, "[t]he arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the in-

## A. Burden to Prove the Existence of an Arbitration Agreement

"[T]he FAA creates a 'presumption of arbitrability' such that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115-16 (11th Cir. 2014)). "Nonetheless, 'while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made.'" *Id.* (quoting *Dasher*, 745 F.3d at 1116). "The threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.'" *Id.* (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). "Absent such an agreement, 'a court cannot compel the parties to settle their dispute in an arbitral forum.'" *Id.* (quoting *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004)). "[S]tate law governs the issue of the existence of an agreement to arbitrate under the FAA." *Id.* at 1330 (citing *First*

---

terpretation, applicability, enforceability or formation of the Agreement, including . . . whether a claim is subject to arbitration." This clause does not mean that the arbitration issue presented by this appeal must be decided by an arbitrator. Although "a court may not override" a contract's delegation of "the arbitrability question" to an arbitrator, "before referring a dispute to an arbitrator, *the court* determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68-69 (2019) (emphasis added). "[W]hether a valid arbitration agreement exists" is the exact issue that we must decide in this appeal. *See id.* at 69.

*Options of Chi.*, 514 U.S. at 944). The parties agree that Florida law applies here.

Under Florida law, "[t]he party seeking enforcement of an agreement has the burden of establishing that an enforceable agreement exists." *CEFCO v. Odom*, 278 So. 3d 347, 352 (Fla. 1st DCA 2019); *see also Palm Garden of Healthcare Holdings, LLC v. Haydu*, 209 So. 3d 636, 638 (Fla. 5th DCA 2017) ("Appellants, as the proponents of arbitration, have the burden of establishing an enforceable written agreement to arbitrate.").

The plaintiffs argue that YATCO failed to satisfy this burden because it did not produce the actual agreement that any of their brokers purportedly signed to access YATCO's MLS website. They reason that the declaration YATCO submitted with its arbitration motion only established that the SaaS agreement "ha[d] been in place since 2020." Yet, the plaintiffs assert that, under YATCO's theory, their brokers could have signed the agreement prior to 2020, at a time when the proffered agreement with the arbitration clause was not yet in place. The plaintiffs conclude that, therefore, YATCO's theory "depends on conjecture, not burden-discharging evidentiary support."

We agree with the plaintiffs that YATCO failed to satisfy its threshold burden of proving the existence of an arbitration agreement. YATCO's arbitration motion was based to a significant extent on speculation inconsistent with that burden under Florida law. *See CEFCO*, 278 So. 3d at 352; *Palm Garden of Healthcare Holdings*, 209 So. 3d at 638; *see also Bazemore*, 827 F.3d at 1330-32 (holding

that defendant failed to satisfy its burden under Georgia law of establishing existence of an arbitration agreement because defendant relied on speculation without affirmatively proving that the plaintiff had accepted an agreement with an arbitration clause).

Aside from the flaws the plaintiffs identify, there is an even more fundamental problem with YATCO's arbitration theory. YATCO's arbitration motion was based on the assumption that the plaintiffs' brokers actually listed the plaintiffs' yachts for sale on its MLS website, and thus the brokers must have agreed to the SaaS agreement on the plaintiffs' behalf.

However, YATCO submitted no evidence that the plaintiffs' brokers actually listed the plaintiffs' yachts for sale on YATCO's MLS website. And there are no allegations in either the consolidated complaint or the plaintiffs' individual pre-consolidation complaints establishing that the plaintiffs' brokers actually listed the plaintiffs' yachts for sale on YATCO's MLS website.[6]

---

[6] The consolidated complaint could be read as expressing that the brokers representing some of the putative class action plaintiffs might have listed yachts for sale on YATCO's MLS website. Even if that is true, the district court lacked jurisdiction to compel arbitration as to any putative class members. *See In re Checking Acct. Overdraft Litig.*, 780 F.3d 1031, 1037 (11th Cir. 2015) (holding that district court lacked jurisdiction to resolve motion to conditionally compel arbitration of claims of putative class members because the putative class members were not before the court as their claims "necessarily exist[ed] only by hypothesis"); *see also Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1238 (11th Cir. 2018).

12                    Opinion of the Court                    25-10140

The consolidated complaint alleged that two of the plaintiffs' yachts had been listed for sale on a different MLS website "YachtWorld" "along with other MLS" websites. Further, the complaint merely alleged that the other plaintiffs' yachts had been listed for sale using MLS websites without specifying which in particular. These allegations indicate that the plaintiffs' brokers might have listed the yachts for sale on YATCO's MLS website but do not establish that they actually did so.

The contention that the plaintiffs' brokers actually listed the plaintiffs' yachts for sale on YATCO's MLS website is a necessary predicate of YATCO's arbitration argument. Because YATCO failed to provide any evidence indicating that this contention is true and relied solely on speculation and assumption, YATCO failed to satisfy its burden of proving the existence of a valid arbitration agreement.[7] *See CEFCO*, 278 So. 3d at 352; *Palm Garden of Healthcare Holdings*, 209 So. 3d at 638; *Bazemore*, 827 F.3d at 1330-32.

---

[7] YATCO asserted in the district court that the plaintiffs' claims depended on their yachts having been listed for sale on its MLS website because if that was not true, then the plaintiffs' antitrust claims against it would be subject to dismissal. The plaintiffs argued in response that YATCO could be held liable for antitrust violations as a co-conspirator even if it did not have a direct relationship with them. Whether or not the plaintiffs' claims may be subject to dismissal on this basis is not before us in this interlocutory appeal. And the resolution of that issue does not change the fact that there is no record evidence or allegations establishing that the plaintiffs' brokers actually listed the plaintiffs' yachts for sale on YATCO's MLS website.

YATCO attempts to get around this problem by arguing that it is actually the plaintiffs who have the burden of disproving its "evidence" as the parties opposing arbitration.

It is true that under the FAA "the party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000). However, the same is not true for the threshold issue of whether an arbitration agreement exists in the first place, which does not benefit from the presumption in favor of arbitrability. *See Bazemore*, 827 F.3d at 1329-30. That issue is governed by state law, including the issue of which party bears the burden of establishing or disproving the existence of an arbitration agreement. *See id.* at 1330 (explaining that "state law governs the issue of the existence of an agreement to arbitrate under the FAA," and so the defendant bore the burden of proving the existence of an arbitration agreement as required by Georgia law). Thus, Florida law controls, and Florida law places the burden to prove the existence of an arbitration agreement on the party seeking to compel arbitration. *See CEFCO*, 278 So. 3d at 352; *Palm Garden of Healthcare Holdings*, 209 So. 3d at 638.

Regardless of all of the above, even if we were to assume like the district court that the plaintiffs' brokers (1) did in fact list the plaintiffs' yachts for sale on YATCO's MLS website and (2) accepted a version of the SaaS agreement that contained an arbitration clause, we would still affirm the district court's denial of YATCO's arbitration motion. That is because YATCO has failed to

establish that the plaintiffs as nonsignatories to the SaaS agreement are bound by their brokers' purported acceptance of that agreement under either agency or estoppel principles.

## B. Agency

Under Florida law, "generally speaking, one who has not agreed to be bound by an arbitration agreement cannot be compelled to arbitrate." *Paquin v. Campbell*, 378 So. 3d 686, 690 (Fla. 5th DCA 2024) (quotation marks omitted). However, "[n]on-signatories may be bound to arbitration agreements under theories of (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/alter ego; and (5) estoppel." *Id.*

An agency relationship may be established either through express agreement, *i.e.*, actual agency, or implication, *i.e.*, apparent agency. *Mia. Dolphins, Ltd. v. Engwiller*, 410 So. 3d 685, 690 (Fla. 3d DCA 2025). An agency relationship may also be established retroactively by ratification: "It is a fundamental proposition of the law of agency that a principal may subsequently ratify its agent's act, even if originally unauthorized, and such ratification relates back and supplies the original authority." *Kumar Corp. v. Nopal Lines, Ltd.*, 462 So. 2d 1178, 1185 (Fla. 3d DCA 1985); *see also Deutsche Credit Corp. v. Peninger*, 603 So. 2d 57, 58 (Fla. 5th DCA 1992) ("Ratification of an agreement occurs where a person expressly or impliedly adopts an act or contract entered into in his or her behalf by another without authority.").

YATCO acknowledges that at the time the plaintiffs' brokers purportedly accepted the SaaS agreement, they were not necessarily acting as the plaintiffs' agents because the brokers likely accepted the agreement to generally use YATCO's MLS website prior to forming an agency relationship with the plaintiffs specifically. Given that acknowledgement, YATCO argues that the plaintiffs are bound by their brokers' acceptance of the SaaS agreement because when the brokers listed the plaintiffs' yachts for sale on YATCO's MLS website, the plaintiffs ratified the brokers' prior acceptance of the agreement, even if the plaintiffs were not aware of the agreement or its terms.

In support of this argument, YATCO relies on *Miami Dolphins, Ltd. v. Engwiller*. In *Miami Dolphins*, a plaintiff sued the Miami Dolphins for injuries she suffered in their stadium, and the Dolphins sought to arbitrate the plaintiff's claims based on an arbitration clause in the terms all entrants to the stadium were required to accept when purchasing tickets. 410 So. 3d at 687-88. However, the plaintiff's mother was the one who purchased the tickets and agreed to the relevant terms, not the plaintiff herself. *Id.* Nevertheless, Florida's Third District Court of Appeal held that the plaintiff was bound by the arbitration clause in the ticket terms based on her mother's acceptance of those terms under agency principles. *Id.* at 691-92.

The court reasoned that, although the plaintiff's mother might not have been acting as her daughter's agent when she purchased the tickets, the mother was acting in that role when the

plaintiff "allowed her [mother] to present the ticket on her behalf to enter the stadium and attend the game." *Id.* at 691. Thus, the plaintiff ratified her mother's previous action of accepting the ticket terms. *Id.* The court also noted that all entrants to the stadium were required to accept the ticket terms, and the Dolphins would not have permitted the plaintiff to enter the stadium without accepting the terms. *Id.*

The problem with YATCO's reliance on *Miami Dolphins* is that the proposition YATCO asserts that case stands for is inconsistent with Florida Supreme Court precedent. YATCO cites to *Miami Dolphins* to support the proposition that a principal may ratify its agent's prior unauthorized execution of a contract even if the principal was not fully informed of the contract or its terms. *Miami Dolphins* appears to support that proposition because in that case there was no indication that the plaintiff knew of the ticket terms her mother accepted, including the arbitration provision, but the court still concluded that the plaintiff ratified her mother's acceptance of those terms. *See id.* at 687-88, 691-92.

However, the Florida Supreme Court has stated, "[b]efore one may infer that a principal ratified an unauthorized act of his agent, the evidence must demonstrate that the principal was *fully informed* and that he approved of the act." *Frankenmuth Mut. Ins. Co. v. Magaha*, 769 So. 2d 1012, 1022 (Fla. 2000) (quoting *Bach v. Fla. State Bd. of Dentistry*, 378 So. 2d 34, 36-37 (Fla. 1st DCA 1979)). The Court added, "[i]t is generally the rule that the doctrine of construc-

25-10140                Opinion of the Court                    17

tive knowledge does not apply to bring about ratification. The principal is charged only upon a showing of full knowledge, and not because he had notice which should have caused him to make inquiry, which in turn would have brought to his attention the knowledge of the unauthorized act of the [agent]." *Id.* (quoting *Bach*, 378 So. 2d at 36-37). The Court described these principles as "well established in Florida jurisprudence." *Id.*

To the extent that *Miami Dolphins* is inconsistent with the "full knowledge" requirement for ratification described in *Frankenmuth*, we must follow *Frankenmuth*. In applying state law, we first look to the decisions of the state supreme court, and only if there are no relevant state supreme court decisions do we rely on the decisions of state intermediate courts. *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1021 (11th Cir. 2014).

In light of these principles, YATCO's ratification argument fails because YATCO did not submit any evidence establishing that the plaintiffs knew either of the SaaS agreement their brokers purportedly accepted prior to the formation of an agency relationship or the terms of that agreement. *See Frankenmuth*, 769 So. 2d at 1022 ("An agreement is deemed ratified where the principal has full knowledge of all material facts and circumstances relating to the unauthorized act or transaction at the time of the ratification." (quoting *Deutsche Credit Corp.*, 603 So. 2d at 58)). Further, the brokers' knowledge of the SaaS agreement's terms cannot be imputed to the plaintiffs because the brokers obtained that knowledge when

they signed the agreement prior to the formation of an agency relationship with the plaintiffs. *See Ruotal Corp., N.W., Inc. v. Ottati*, 391 So. 2d 308, 309 (Fla. 4th DCA 1980) ("[K]nowledge of the agent constitutes knowledge of the principal *as long as the agent received such knowledge while acting within the scope of his authority.*" (emphasis added)); *Davies v. Owens-Ill., Inc.*, 632 So. 2d 1065, 1066 (Fla. 3d DCA 1994) (same). Because the plaintiffs were not "fully informed" of their brokers' actions in purportedly accepting the SaaS agreement prior to the formation of the agency relationship, the plaintiffs cannot be bound by those actions based on a ratification theory. *See Frankenmuth*, 769 So. 2d at 1022.

YATCO also failed to show implied ratification because "[b]efore ratification will be implied of an act of an unauthorized agent it must be made to appear that the principal has been fully informed and that he has approved." *Id.* at 1021 (quoting *Ball v. Yates*, 29 So. 2d 729, 732 (Fla. 1946)). In *Miami Dolphins*, there was evidence supporting that the plaintiff knew of the ticket terms based on her entry to the stadium because only people who accepted the terms were permitted to enter the stadium. 410 So. 3d at 691. In this case, however, there is no evidence that the plaintiffs themselves ever used YATCO's MLS website as opposed to their brokers. Consequently, there is no evidence that the plaintiffs had full knowledge of the SaaS agreement simply because their brokers used YATCO's MLS website on their behalf.

For these reasons, YATCO is incorrect that the plaintiffs are required to arbitrate their claims based on agency principles.

## C. *Equitable Estoppel*

"Equitable estoppel precludes a party from claiming the benefits of some of the provisions of a contract while simultaneously attempting to avoid the burdens that some other provisions of the contract impose." *Lubin v. Starbucks Corp.*, 122 F.4th 1314, 1321 (11th Cir. 2024) (citation modified) (applying Florida law).  A signatory to a contract can enforce the terms of the contract against a nonsignatory under the doctrine of equitable estoppel only if (1) the nonsignatory "is relying on the agreement to assert his claims" and (2) "the scope of the arbitration clause covers the dispute." *Id.* (citation modified).

As to the first element, "reliance on the contract . . . requires that [the nonsignatory] must actually depend on the underlying contract to assert its claims." *Allscripts Healthcare Sols., Inc. v. Pain Clinic of Nw. Fla., Inc.*, 158 So. 3d 644, 647 (Fla. 3d DCA 2014) (quotation marks omitted).  "Thus, for [equitable estoppel] to apply, the claim [that the nonsignatory asserts] must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself." *Id.* (citation modified).

For example, in *UBS Financial Services, Inc. v. Saunders*, Florida's Second District Court of Appeal concluded a nonsignatory plaintiff was bound by a contract's arbitration provision under equitable estoppel because the plaintiff was claiming entitlement to benefits that the signatory defendant was obligated to provide under the contract.  424 So. 3d 1013, 1016-17 (Fla. 2d DCA 2025).  In

contrast, in *Lubin v. Starbucks Corp.*, we concluded under Florida law that a nonsignatory plaintiff was not bound by an arbitration provision in his wife's employment agreement under equitable estoppel where the husband was suing his wife's former employer for sending deficient health-insurance notices in violation of the Employee Retirement Income Security Act. 122 F.4th at 1317, 1321-22. We reasoned that the plaintiff was not suing his wife's former employer to enforce or avoid any provision of his wife's employment agreement but instead was suing based on the defendant's statutory obligations to the plaintiff specifically that did not arise out of any provision of the agreement. *Id.* at 1321-22. Thus, the plaintiff was not "claiming the benefits of the agreement while simultaneously attempting to avoid its burdens." *Id.* at 1321.

This case is more analogous to *Lubin* than it is to *UBS Financial Services*. The plaintiffs sued YATCO and other defendants for antitrust violations under the Sherman Act, alleging that the defendants conspired to fix and inflate the commissions that sellers of used yachts were required to pay to buyer brokers. The plaintiffs' federal statutory claims do not "raise some issue the resolution of which requires reference to or construction of some portion of the" SaaS agreement. *See Allscripts Healthcare Sols.*, 158 So. 3d at 647. Like in *Lubin*, the plaintiffs are not seeking to enforce or avoid any provision of the SaaS agreement, and they are suing YATCO based on a duty that arises from a federal statute and is not related to any provision of the SaaS agreement. *See* 122 F.4th at 1317, 1321-22. And because the plaintiffs are not claiming entitlement to benefits that YATCO is obligated to provide under the SaaS agreement, the

25-10140                Opinion of the Court                21

plaintiffs' claims are unlike the claims asserted in *UBS Financial Services*. *See* 424 So. 3d at 1016-17; *see also Mendez v. Hampton Ct. Nursing Ctr., LLC*, 203 So. 3d 146, 149 (Fla. 2016) (explaining that a party to a contract may not compel a noncontracting third-party beneficiary to arbitrate based on the contract if the latter does not bring suit for the benefit of the contract).

The SaaS agreement only relates to the brokers' use of YATCO's MLS service and has no direct connection with the alleged conspiracy. The SaaS agreement contains no provisions concerning broker commissions or the requirement that only sellers represented by brokers can list used yachts for sale on its MLS website, which is the focus of the plaintiffs' antitrust allegations against YATCO and other MLS defendants.

For these reasons, the plaintiffs are not obligated to arbitrate their claims against YATCO under the doctrine of equitable estoppel.[8]

---

[8] YATCO cites in support of its estoppel argument the nonbinding district court case *Osterer v. BAM Trading Servs. Inc.*, 753 F. Supp. 3d 1289 (S.D. Fla. 2024). In that case, the district court compelled arbitration based on equitable estoppel because the nonsignatory plaintiff was suing the signatory defendant "for failing to exercise a right created by the" terms of the relevant contract even though the plaintiff's claims were based on a federal statute. *Id.* at 1296. In this case, however, the plaintiffs are not suing YATCO "for failing to exercise a right created by the" SaaS agreement, but rather alleged that YATCO committed antitrust violations unrelated to the agreement.

### III.  CONCLUSION

The district court did not err by denying YATCO's motion to compel arbitration because YATCO failed to satisfy its burden of proving the existence of an agreement to arbitrate.  Additionally, arbitration is not required under agency and estoppel principles.

**AFFIRMED.**